UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------- x

SHAKEEM BOYKINS, KEVIN WINT AND
PRINCETON ANTOINE,

                           Plaintiffs,

              -against-

CITY OF NEW YORK, POLICE OFFICER VLADIMIR
RAVICH, SHIELD NO. 14673, POLICE OFFICER
THEODORE PETERS, SHIELD NO. 13285, SERGEANT
THOMAS TURNER, SHIELD NO. 02747, POLICE
OFFICER JOHN DOE 1,

                       Defendants.

---------------------------------------------------------------------- x

**FIRST AMENDED
COMPLAINT AND
JURY DEMAND**

Docket No. 13-cv-02299-ENV-
RER

ECF CASE

Plaintiffs Shakeem Boykins, Kevin Wint and Princeton Antoine, by their attorneys, Stoll,
Glickman & Bellina, LLP, for their complaint allege as follows:

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiffs seek relief through 42 U.S.C.
§1983 for the violation of their Fourth and Fourteenth Amendment rights in addition to
violations of the laws and Constitution of the State of New York.

2.    The claim arises from a February 7, 2012 incident in which Officers of the New
York City Police Department ("NYPD"), acting under color of state law, intentionally
and willfully subjected plaintiffs to, among other things, assault, battery, excessive force,
false arrest, false imprisonment, and malicious prosecution.

3.    Plaintiffs seek monetary damages (special, compensatory, and punitive) against
defendants, as well as an award of costs and attorneys' fees, and such other and further
relief as the Court deems just and proper.

## JURISDICTION

4.    This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

5.    The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

6.    The amount in controversy exceeds $75,000.00 excluding interest and costs.

## VENUE

7.    Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

8.    Plaintiff resided at all times here relevant in Kings County, City and State of New York.

9.    The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

10.    Police Officer Vladimir Ravich was, at all times here relevant, a police officer

of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Ravich was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Ravich was under the command of the PSA 2 precinct on the date of the incident. On information and belief, at all times relevant hereto, Defendant Ravich was under the command of the PSA 2 precinct and is sued in his individual capacity.

11.  POLICE OFFICER THEODORE PETERS, SHIELD NO. 13285, was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Peters was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Peters was under the command of the PSA 2 precinct on the date of the incident. On information and belief, at all times relevant hereto, Defendant Peters was under the command of the PSA 2 precinct and is sued in his individual capacity.

12.  SERGEANT THOMAS TURNER, SHIELD NO. 02747 was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Turner was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief,

defendant Turner was under the command of the PSA 2 precinct on the date of the incident. On information and belief, at all times relevant hereto, Defendant Turner was under the command of the PSA 2 precinct and is sued in his individual capacity.

13. At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

NOTICE OF CLAIM

14. Within 90 days of the events giving rise to these claims, plaintiffs filed written notices of claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

FACTUAL ALLEGATIONS

15. On February 7, 2012, at approximately 8:00 p.m., plaintiffs, plus two younger boys, were leaving 1306 Loring Avenue in Brooklyn, New York, where they were all visiting Kevin Wint's friend on the sixth floor.

16. As they exited the building, a man in a grey hooded sweatshirt and blue jeans ran up behind them and pushed one of the younger boys onto a gate, holding his hands behind his back.

17. The young boy struggled against the man in the grey hooded sweatshirt, who then hit him in the head 3-4 times with what appeared to be a walkie talkie.

18. Kevin Wint started to record the assault on his phone's video camera from about ten feet away, however it was too dark for the recording to catch what was happening.

19. Shakeem Boykins handed Kevin Wint his phone, which had a video camera

with a flash, but Kevin had a hard time getting that phone to record.

20. Residents in the buildings nearby began to yell out their windows at the man beating the younger boy.

21. The man in the grey hooded sweatshirt tried to reach out and grab Kevin Wint while he was still holding the younger boy and Kevin Wint backed up, still attempting to record.

22. Another man in a blue Giants jersey came from the building and ran towards the boys, yelling "cuff everybody".

23. The man in the grey hooded sweatshirt cuffed the young boy and successfully grabbed Kevin Wint as an Impala drove up on the sidewalk and other men in regular clothing ran out.

24. The man in the grey hooded sweatshirt pushed Kevin Wint against the gate and kneed him in the back, twisted his wrists into a wrist lock and pushed him to the ground.

25. On the ground, the man in the grey hooded sweatshirt had a knee in Kevin Wint's back and punched him in the side of his face multiple times. Kevin Wint also felt a stick poking him in his buttocks while he was held down on the ground.

26. Police officers in uniform began to arrive on the scene.

27. A uniformed police officer pushed Princeton Antoine onto the ground and handcuffed him.

28. Shakeem Boykins sat on the ground without handcuffs, as directed by the officers.

29. Princeton Antoine and the younger boys were put in one vehicle, Shakeem Boykins and Kevin Wint were placed in two separate vehicles.

30.    By the time they left, there were many officers on the scene in both white shirts, uniform and plainclothes.

31.    At the precinct, each boy was interrogated individually. Their faces and tattoos were photographed while they were in the interrogation rooms.

32.    Shakeem Boykins was under 18 at the time of the interrogation.

33.    Kevin Wint went to Brookdale Hospital from the precinct, was treated for facial contusion and body aches and then released.

34.    Defendants fabricated false charges against plaintiffs for two counts of attempted robbery in the second degree, two counts of attempted criminal possession of a weapon in the second degree, felony assault in the second degree, attempted felony assault in the second degree, attempted grand larceny in the fourth degree, attempted robbery in the third degree, assault in the third degree, obstructing governmental administration in the second degree, resisting arrest, and attempted petit larceny.

35.    Shakeem Boykins spent approximately ten days on Rikers Island.

36.    Princeton Antoine spent 5 days on Rikers Island.

37.    Kevin Wint was released after arraignment.

38.    All charges were dismissed by the Grand Jury.

39.    At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiffs' rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events.  They failed to intervene in the obviously illegal actions of their fellow officers against plaintiffs.

40.    During all of the events above described, defendants acted maliciously and with intent to injure plaintiffs.

## DAMAGES

41.    As a direct and proximate result of the acts of defendants, plaintiffs suffered the following injuries and damages:

      a.      Violation of their rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

      b.      Violation of their rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

      c.      Violation of their New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

      d.      Violation of their New York State Constitutional rights under Article 1, Section 6 to due process;

      e.      Physical pain and suffering;

      f.      Emotional trauma and suffering, including fear, embarrassment, humiliation, harassment, emotional distress, frustration, extreme inconvenience, anxiety; and

      g.      Loss of liberty.

### FIRST CAUSE OF ACTION
42 U.S.C. § 1983
False Arrest and False Imprisonment
(Against Officer Defendants)

42.    The above paragraphs are here incorporated by reference.

43.    The officer defendants wrongfully and illegally arrested, detained and

imprisoned plaintiffs.

44. The wrongful, unjustifiable, and unlawful apprehensions, arrests, detentions, and imprisonment of plaintiffs were carried out without a valid warrant, without plaintiffs' consent, and without probable cause or reasonable suspicion.

45. At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiffs.

46. Throughout this period, plaintiffs were unlawfully, wrongfully, and unjustifiably held under arrest, deprived of their liberty, imprisoned and falsely charged.

47. At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiffs were without basis and without probable cause or reasonable suspicion.

48. All of this occurred without any illegal conduct by plaintiffs.

49. All charges were dismissed.

50. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiffs of their constitutional rights secured by the United States Constitution.

51. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

SECOND CAUSE OF ACTION
New York State Constitution Article I §12
False Arrest and False Imprisonment
(Against All Defendants)

52. The above paragraphs are here incorporated by reference.

53. The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiffs.

54. The wrongful, unjustifiable, and unlawful apprehensions, arrests, detentions, and imprisonment of plaintiffs were carried out without a valid warrant, without plaintiffs' consent, and without probable cause or reasonable suspicion.

55. At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiffs.

56. Throughout this period, plaintiffs were unlawfully, wrongfully, and unjustifiably held under arrest, deprived of their liberty, imprisoned and falsely charged.

57. At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiffs were without basis and without probable cause or reasonable suspicion.

58. All of this occurred without any illegal conduct by plaintiffs.

59. All charges were dismissed.

60. Defendants, their officers, agents, servants and employees, were responsible for plaintiffs' arrests, detentions and imprisonments during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

61. Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of plaintiffs' rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct towards plaintiffs.

62. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as

NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiffs of their constitutional rights secured by the Constitution of the State of New York.

63. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

THIRD CAUSE OF ACTION
False Arrest and False Imprisonment
(Against All Defendants)

64. The above paragraphs are here incorporated by reference.

65. Defendants subjected plaintiffs to false arrest, false imprisonment, and deprivation of liberty without probable cause.

66. Defendants intended to confine plaintiffs, plaintiffs were conscious of their confinement and did not consent to their confinement.

67. All charges were dismissed.

68. Defendants, their officers, agents, servants and employees, were responsible for plaintiffs' arrests, detentions and imprisonments during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior*.

69. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

FOURTH CAUSE OF ACTION
Malicious Prosecution
(Against All Defendants)

70. The preceding paragraphs are here incorporated by reference.

71.   Defendants, acting with malice, initiated a prosecution against plaintiffs and caused them to be prosecuted.

72.   Defendants did not have probable cause to initiate proceedings.

73.   The criminal proceedings were terminated in plaintiffs' favor.

74.   Defendants have deprived plaintiffs of their civil, constitutional and statutory rights and have conspired to deprive them of such rights and are liable to plaintiffs under 42 U.S.C. §1983, New York State common law, and the New York State Constitution.

75.   As a result of the malicious prosecution implemented by defendants, plaintiffs were damaged.

FIFTH CAUSE OF ACTION
42 U.S.C. §1983
Excessive Force
(Against Officer Defendants)

76.   The above paragraphs are here incorporated by reference.

77.   By using excessive force against plaintiff Kevin Wint, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, defendants deprived plaintiffs of their rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by the Fourth Amendment to the United States Constitution.

78.   In addition, the officer defendants conspired amongst themselves to deprive plaintiffs of their constitutional rights and took numerous steps in furtherance of such conspiracy, as set forth above.

79.   The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their

jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiffs of their constitutional rights secured by the United States Constitution.

80.   As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

SIXTH CAUSE OF ACTION
New York State Constitution Art. I § 12
Excessive Force
(Against All Defendants)

81.   The above paragraphs are here incorporated by reference.

82.   By using excessive force against plaintiff Kevin Wint, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, defendants deprived plaintiffs of their rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by Article I Section 12 of the New York State Constitution.

83.   In addition, the officer defendants conspired amongst themselves to deprive plaintiffs of their constitutional rights and took numerous steps in furtherance of such conspiracy, as set forth above.

84.   Defendants, their officers, agents, servants and employees, were responsible for plaintiffs' arrests, detentions and imprisonments during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

85.   The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their

jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiffs of their constitutional rights secured by the New York State Constitution.

86. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

## SEVENTH CAUSE OF ACTION
### Assault and Battery
### (Against All Defendants)

87. The above paragraphs are here incorporated by reference.

88. Upon approaching, pushing, throwing plaintiffs to the ground, handcuffing and arresting plaintiffs, defendants made plaintiffs fear for their physical well-being and safety and placed them in apprehension of immediate harmful and/or offensive touching.

89. Defendants engaged in and subjected plaintiffs to immediate harmful and/or offensive touching and battered them without their consent.

90. Defendants used excessive and unnecessary force with plaintiffs.

91. Defendants, their officers, agents, servants and employees, were responsible for plaintiffs' arrests, detentions and imprisonments during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

92. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiffs sustained the damages described above.

## EIGHTH CAUSE OF ACTION
### Negligent Hiring & Retention
### (Against City Defendant)

93. The above paragraphs are here incorporated by reference.

94.   Upon information and belief, defendant City, through the NYPD, owed a duty of care to plaintiffs to prevent the physical and mental abuse sustained by plaintiffs.

95.   Upon information and belief, defendant City, through the NYPD, owed a duty of care, to plaintiffs because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to plaintiffs' as a result of this conduct.

96.   Upon information and belief, defendant officers were incompetent and unfit for their positions.

97.   Upon information and belief, defendant City knew or should have known through exercise of reasonable diligence that the officer defendants were potentially dangerous.

98.   Upon information and belief, Defendant City's negligence in hiring and retaining the officer defendants proximately caused plaintiffs' injuries.

99.   Upon information and belief, because of the defendant City's negligent hiring and retention of defendant officers, plaintiffs incurred damages described above.

### NINTH CAUSE OF ACTION
MUNICIPAL AND SUPERVISORY LIABILITY
(Against Defendant City)

100.  The above paragraphs are here incorporated by reference.

101.  The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeat routine misconduct by the same officers, same units and same precincts. In 2010, New York City paid out $136 million[1] for the fiscal

---

1 Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/ and June 13, 2011, "With Budget Deadline

year, compared to 2009, when it paid out more than $117 million, and 2008, when it paid $80 million.[2] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[3] More than 40% of those settlements in 2011 stem from excessive force and false arrest.

102. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

103. However, the City of New York has isolated NYPD officers from accountability for its civil rights lawsuits and, as a result, is preventing civil rights

Looming, City Lawsuits Come Under Scrutiny": http://www.wnyc.org/articles/wnyc-news/2011/jun/13/budget-deadline-looming-city-lawsuits-come-under-scrutiny/, last visited on July 7, 2011

[2] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

[3] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil

rights lawsuits against police officers have no impact on the officers' careers, regardless

of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits.

In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect"

between the settlements of even substantial civil claims and police department action

against officers. This "total disconnect" between officers' liability and NYPD discipline,

results in a system where the City pays vast sums to settle false arrests, but the NYPD

does nothing to investigate nor address the underlying causes of such false arrests. The

City Council, Government Operations Committee, despite being alerted at a City Council

hearing on December 12, 2009, and on other occasions, to the obvious problem of

officers and precincts with a disproportionate responsibility for civil rights lawsuit

liability, has failed to take action to hold officers or precincts accountable. It has likewise

failed to hold an investigative hearing into what extent specific officers, units and

precincts are disproportionately responsible for New York City civil rights lawsuits.

104.  The City is liable for the damages suffered by plaintiffs in that, after learning of

their employees' violation of plaintiffs' constitutional rights, they failed to remedy the

wrong; they have created a policy or custom under which unconstitutional practices

occurred and allowed such policies or customs to continue, and they have been grossly

negligent in managing subordinates who caused the unlawful condition or event.

105.  The aforesaid event underlying plaintiffs' factual allegations was not an isolated

incident.  The City has been aware for some time, from lawsuits, notices of claim,

complaints filed with the Civilian Complaint Review Board, and judicial rulings

suppressing evidence and finding officers incredible as a matter of law, that a disturbing

number of their police officers unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers. Nevertheless, the City has allowed policies and practices that allow the aforementioned to persist.

106. The City has been alerted to the regular use of false arrests by its police officers, through lawsuits, civilian complaints, notices of claim, City Council hearings, newspaper reports, and cases resulting in declined prosecutions and dismissals, but has nevertheless exhibited deliberate indifference to such false arrests; that deliberate indifference caused the violation of plaintiff's constitutional rights in this case. In 2009, New York City has seen a 46 percent jump in payouts to settle claims against the NYPD and has paid out more than $117 million in fiscal year 2009, compared to $80 million in 2008.[4] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[5]

107. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, towards individual officers repeatedly named in lawsuits, towards incidents repeatedly occurring in the same precinct, towards patterns of

---

[4] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

[5] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

misconduct that arise in civil rights litigation has caused the constitutional violations against plaintiff.

108.  Additionally, according to a report of the New York City Bar Association issued in 2000, the City has isolated its law department from the discipline of police officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the officers' responsibility lawsuit liability, even after multiple lawsuits. Alan Hevesi, as New York City Comptroller, in 1999 reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.  Nothing has changed since 1999 and the present regarding this "total disconnect" between officers' liability and NYPD discipline, resulting in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests.

109.  The City has also been alerted to the regular use of stop and frisks by its police officers, which disproportionately target people of color, despite the lack criminal evidence that such stop and frisks actually produce, and despite the humiliation, inconvenience and constitutional violations that the majority of law-abiding people, mostly in communities of color, suffer as a result. In 2008, of the 531,159 New Yorkers were stopped by the police, 465,413 were totally innocent (88 percent). From the total, 271,602 were black (51 percent); 167,111 were Latino (32 percent); and 57,407 were white (11 percent). In 2007, of the 468,732 New Yorkers were stopped by the police, 407,923 were totally innocent (87 percent). From the total in 2007, 242,373

were black (52 percent), 142,903 were Latino (31 percent), 52,715 were white (11 percent).[6]

110. The City is also aware that the misconduct does not stop at the regular use of stop and frisks to violate the civil rights of innocent people. In 2008, more than half (51%) of the summonses issued by NYPD officers were dismissed for legally insufficient evidence. Police officers have repeatedly told New York City news investigations that their supervisors pressure them into reaching "performance goals" or quotas, resulting in the violation of innocent New Yorker's civil rights.[7]

111. The Civilian Complaint Review Board ("the CCRB"), a City police oversight agency, often finds complainants lack credibility based in part on the fact that such complainants have also brought lawsuits to remedy the wrongs they have experienced, a practice that often results in not substantiating the most serious charges brought to the CCRB. In addition, the CCRB virtually never initiates their own findings of false statements against officers who have made false statements to the CCRB in their own defense, nor do they initiate findings that officers have failed to report their fellow officers' misconduct; thus, officers have no real incentive to come forward, or to testify truthfully at the CCRB. The CCRB has no enforcement mechanisms once making a finding against an officer; it can only make recommendations to the NYPD, once finding misconduct by an officer.

112. The NYPD, once receiving a substantiated complaint by the CCRB, fails to adequately discipline officers for misconduct. In 2002, the percentage of officers who

---

[6] See New York Civil Liberties Union "Stop and Frisk Report" available at
http://www.nyclu.org/issues/racial-justice/stop-and-frisk-practices last visited on February 18, 2010. On the website, the NYCLU collects the same data back to 2004.
[7] See WABC's Jim Hoffer's three installments (March 3, May 23 and May 25, 2010) on NYPD quotas available at http://abclocal.go.com/wabc/story?section=news/investigators&id=7461355 last visited May 26, 2010.

were the subject of substantiated CCRB complaints who received no discipline was 47%; in 2007, it was 75%.[8] The NYPD Department Advocate, which is endowed with the responsibility of following up on substantiated CCRB charges, is understaffed and under-utilized. Furthermore, in the extraordinarily rare event that the CCRB substantiates a complaint and the Department Advocate proves the case in an internal trial against an officer, the police commissioner still maintains the power to reduce the discipline against such an officer, which the police commissioner has done on many occasions. This entire procedure provide so many opportunities for meritorious complaints of false arrests to be dismissed or disregarded that there is no credible, effective oversight of police department employees, despite an apparently elaborate set of oversight mechanisms.

113. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

114. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has

---

[8] The NYCLU issued a report in September 2007 on the CCRB detailing the failure of the NYPD to follow up on substantiated CCRB complaints, among other failures by the City and the CCRB to address police misconduct: "Mission Failure: Civilian Review of Policing in New York City, 1994-2006"

revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

115. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

116. Plaintiffs have been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, plaintiffs demand judgment against the defendants, jointly and severally, as follows:

A.     In favor of plaintiffs in an amount to be determined by a jury for each of plaintiffs' causes of action;

B.     Awarding plaintiffs punitive damages in an amount to be determined by a jury;

C.     Awarding plaintiffs reasonable attorneys' fees, costs and disbursements of this action; and

D.     Granting such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.


DATED:      October 10, 2013
            Brooklyn, New York


TO:

City of New York
100 Church Street
New York, NY  10007

Respectfully yours,

By: Cynthia Conti-Cook
Bar# CC0778
Stoll, Glickman & Bellina, LLP
Attorneys for Plaintiff
475 Atlantic Avenue 3rd Floor
Brooklyn, NY  11217
(718) 852-3710
(718) 852-3586
cconti-cook@stollglickman.com